706 So.2d 1196 (1996)
Mayolia B. HAMPTON
v.
LIBERTY NATIONAL LIFE INSURANCE COMPANY.
2950737.
Court of Civil Appeals of Alabama.
December 6, 1996.
Rehearing Denied January 10, 1997.
David P. Shepherd and Mark S. Gober of Law Offices of David P. Shepherd, Fairhope, for appellant.
Joseph C. Sullivan, Jr., of Hamilton, Butler, Riddick, Tarlton & Sullivan, P.C., Mobile, for appellee.
RICHARD L. HOLMES, Retired Appellate Judge.
Mayolia B. Hampton appeals from a summary judgment in favor of Liberty National Life Insurance Company ("Liberty"). This case is before this court pursuant to Ala. Code 1975, § 12-2-7(6).
The facts of this case are summarized in the joint stipulation of facts set forth by the parties and made part of the record on appeal:
"1. Mayolia B. Hampton sued Liberty National Life Insurance Company, et al. (Civil Action Number CV-90-796) in the Circuit Court of Baldwin County in 1990. That case involved an insurance policy issued to Mrs. Hampton's husband who was at the time of that suit deceased. That suit was settled by and between the parties and a Release was executed by the parties....
"2. The parties further stipulate that Mayolia B. Hampton has again sued Liberty National Life Insurance Company, et al. (Civil Action Number CV-94-893) and that this case filed in Baldwin County, Alabama, in 1994 involves a different policy of insurance than the first case and that the policy of insurance involved therein was issued to Mrs. Hampton.

*1197 "3. The parties further stipulate that neither of them were aware of the alleged claims set out in the 1994 lawsuit at the time of the execution of the Release in the settlement of the 1990 lawsuit."
On September 15, 1995, Liberty filed a motion for a summary judgment, based on the pleadings, the deposition testimony of Hampton, the joint stipulation of facts, and the executed release. On December 12, 1995, the trial court, after hearing oral arguments, granted Liberty's summary judgment motion.
Hampton appeals.
Rule 56(c), Ala. R. Civ. P., provides that a summary judgment is appropriate in situations where no genuine issue of any material fact exists and the movant is entitled to a judgment as a matter of law. It is well settled that the moving party has the burden of establishing that no genuine issue of a material fact exists and that all reasonable uncertainties regarding the existence of a genuine issue of a material fact must be resolved against the moving party. Porter v. Fisher, 636 So.2d 682 (Ala.Civ.App.1994).
Once the movant makes a prima facie case showing that no genuine issue of a material fact exists, then the burden shifts to the nonmoving party to present substantial evidence regarding the existence of a genuine issue of a material fact. Porter, 636 So.2d at 684.
Substantial evidence has been defined as "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989).
Liberty had the initial burden of making a prima facie case showing that there was no genuine issue of a material fact and that it was entitled to a judgment as a matter of law. Porter, 636 So.2d 682. Liberty presented a copy of the release, which was dated May 19, 1992, and was signed by Hampton. The pertinent part of the release reads as follows:
"I, MAYOLIA B. HAMPTON ... do hereby release and forever discharge LIBERTY NATIONAL LIFE INSURANCE COMPANY ... from any and all claims... of any and every kind or nature whatsoever, which I now or may hereafter have, arising from any act, omission, incident or occurrence happening at any time prior to the date of this release and particularly those arising out of or in the future to arise out of, in connection with, or in any way based upon any of the matters made the basis of that certain lawsuit styled Mayolia B. Hampton, Plaintiff vs. Liberty National Life Insurance Company, et al., Defendant, in the Circuit Court of Baldwin County, Case No. CV-90-796 and those arising out of any incident which may have occurred or damages which may ultimately be alleged ... as a result of any act ... or damage occurring prior to the date of this Release.
"In executing this agreement, MAYOLIA B. HAMPTON agrees that she has read this Release ..., that she fully understands the terms and voluntarily accepts them ... and in entering into this settlement..., she has taken into consideration all known injuries ... resulting from the matters set out herein ... which may occur or become known in the future whether anticipated or not."
(Emphasis added.)
Liberty presented Hampton's deposition testimony, wherein she testified that she did not have any further dealings with Liberty after she signed the release. Liberty also noted that Hampton obtained the policy in issue prior to the date she signed the release. Liberty further noted that Hampton used the same attorney in the 1994 lawsuit that she used in the 1990 lawsuit. Liberty presented the relevant part of Hampton's deposition testimony, wherein she stated that her attorney fully explained the release to her and that she understood all the terms of the release.
Liberty contends that the release is unambiguous in its meaning and complete on its face and is, therefore, a complete bar to Hampton's 1994 lawsuit. We conclude that Liberty satisfied its burden for a prima facie *1198 showing that the release is unambiguous. The release plainly states that Hampton "forever" discharges Liberty from any and all claims arising prior to the date of the release.
Hampton, however, contends that the release she signed in regard to the 1990 lawsuit did not preclude her from filing the subsequent lawsuit since the subsequent lawsuit was based on an entirely different policy. Specifically, the 1990 lawsuit involved a life insurance policy on Hampton's deceased husband. The 1994 lawsuit involves a life insurance policy that Liberty issued to Hampton personally. Hampton contends that the release was limited only to claims relating to the 1990 lawsuit.
Thus, the dispositive issue on appeal is whether, as a matter of law, the release is ambiguous.
Our supreme court, in Conley v. Harry J. Whelchel Co., 410 So.2d 14, 15 (Ala.1982), stated the following:
"In the absence of fraud, a release supported by a valuable consideration, unambiguous in meaning, will be given effect according to the intention of the parties to be judged from what appears within the four corners of the instrument itself and parol evidence is not admissible to impeach it or vary its terms."
At the outset, we would note that Hampton does not allege any fraud in regard to the drafting of the release. In support of her contention that the release is ambiguous, Hampton relies solely on the joint stipulation of facts. Specifically, Hampton emphasizes paragraph 2, which indicates that the 1994 lawsuit that she filed "involves a different policy of insurance than the first case." However, Hampton fails to demonstrate how this fact creates an ambiguity on the face of the release. The release specifically states that Liberty is discharged for all claims arising prior to the date of the release. It is undisputed that the policy in question was issued to Hampton prior to the date of the release.
Hampton also emphasizes paragraph 3, which reads as follows: "[t]he parties further stipulate that neither of them were aware of the alleged claims set out in the 1994 lawsuit at the time of the execution of the Release in the settlement of the 1990 lawsuit." However, this contention is plainly irrelevant. The release specifically states that Hampton releases and forever discharges Liberty from any and all claims "which [she] now or may hereafter have," and for all causes of actions "which may occur or become known in the future whether anticipated or not."
Hampton's sole argument is based on contentions, which she has failed to substantiate with any relevant facts. Hampton fails to comment or otherwise elaborate on that portion of the release which plainly states that she forever discharges Liberty from any and all claims arising "prior to the date of [the] Release." Her contentions are basically a mere restatement of the allegations set forth in her complaint and in the joint stipulation of facts.
Rule 56(e), Ala. R. Civ. P., provides, in pertinent part, that once the movant has supported his position that a summary judgment is appropriate, the nonmovant "may not rest upon the mere allegations ... of his pleading, but his response ... must set forth specific facts showing that there is a genuine issue for trial."
Next, Hampton contends that if we find that the release is unambiguous, then we must find that the release was executed under a mutual mistake or, in the alternative, a unilateral mistake, of which Liberty had knowledge. In support of this contention, Hampton cites § 8-1-2, Ala.Code 1975, which provides the following:
"When, through fraud, a mutual mistake of the parties or a mistake of one party which the other at the time knew or suspected, a written contract does not truly express the intention of the parties, it may be revised by a court on the application of the party aggrieved...."
Here, Hampton has failed to produce any evidence of fraud, mutual mistake, or unilateral mistake. However, she strongly contends that the release should be construed according to the "intent of the parties." However, Hampton did not present any evidence of intent. In fact, as stated previously, Hampton used the same attorney in the 1994 *1199 lawsuit that she used in the 1990 lawsuit. Furthermore, Hampton testified that her attorney fully explained the release to her and that she understood all of the terms of the release. Hampton's testimony, therefore, is a strong indication of her intent to forever discharge Liberty of any and all future claims arising prior to the date she signed the release.
In reviewing all the evidence, we find that the release, drafted by Liberty and signed by Hampton, was a full release. The release states that Hampton forever discharges Liberty from any and all claims arising prior to date of the release and particularly any claims relating to the 1990 lawsuit. In the absence of fraud, and in judging the language appearing in the four corners of the release, we find that the release is unambiguous in its meaning and complete on its face. Conley, 410 So.2d at 15.
Additionally, we note that when a release is otherwise unambiguous, its construction and legal effect, being questions of law, may be decided under proper circumstances by a summary judgment. Boggan v. Waste Away Group, Inc., 585 So.2d 1357 (Ala.1991).
Accordingly, we conclude that the trial court correctly entered a summary judgment in favor of Liberty.
The foregoing opinion was prepared by Retired Appellate Judge RICHARD L. HOLMES while serving on active duty status as a judge of this court under the provisions of § 12-18-10(e), Code 1975.
The judgment is due to be affirmed.
AFFIRMED.
ROBERTSON, P.J., and THIGPEN, YATES, and CRAWLEY, JJ., concur.
MONROE, J., dissents.
MONROE, Judge, dissenting.
I cannot agree with the majority that Mrs. Hampton's claims are barred by the release. It is undisputed that Mrs. Hampton executed the release for the settlement of an unrelated lawsuit that concerned her husband's insurance policy only, and that neither party was aware of Mrs. Hampton's claims, arising out of a totally separate policy, at the time the release was executed.
In the absence of fraud, an unambiguous release supported by valuable consideration will be given effect according to the intent of the parties. Whitman v. Walker County Bd. of Education, 591 So.2d 481 (Ala.1991); § 12-21-109, Ala.Code 1975. The court should determine the parties' intent according to the terms found within the four corners of the instrument itself. Id.
The release itself shows that the clear intent of the parties was to release Liberty from any and all claims arising out of or relating to Mr. Hampton's insurance policy the policy upon which the 1990 lawsuit was based. The parties clearly did not intend to release Liberty from liability for claims, then unknown, which concerned a separate insurance policy belonging to Mrs. Hampton.
I would reverse the trial court's summary judgment; therefore, I must respectfully dissent.