735 So.2d 463 (1999)
NEW YORK LIFE INSURANCE COMPANY and Jimmie Stephens
v.
Elsie ROBINSON.
New York Life Insurance Company and Jimmie Stephens
v.
Harry A. Steadham.
New York Life Insurance Company and Jimmie Stephens
v.
Henry E. Armistead.
New York Life Insurance Company and Jimmie Stephens
v.
Oris L. Armistead.
New York Life Insurance Company and Jimmie Stephens
v.
Wilfred S. Vick.
New York Life Insurance Company and Jimmie Stephens
v.
Thomas Boutwell.
1971207 to 1971212.
Supreme Court of Alabama.
April 30, 1999.
*464 C.C. Torbert, Jr., John N. Bolus, Michael D. Mulvaney, and Marcie E. Paduda of Maynard, Cooper & Gale, P.C., Birmingham; and Ronnie E. Keahey, Grove Hill, for appellant New York Life Ins. Co.
Stephen E. Whitehead and James A. Patton, Jr., of Lloyd, Schreiber & Gray, P.C., Birmingham, for appellant Jimmie Stephens.
Gaines C. McCorquodale and Jacqualyn S. Bradley of McCorquodale & McCorquodale, Jackson, for appellee.
Evan M. Tager and Kathryn Schaefer of Mayer, Brown & Platt, Washington, DC; and Phillip E. Stano, American Council of Life Ins., Washington, DC, for amicus curiae American Council of Life Ins., in support of New York Life Ins. Co.
SEE, Justice.
New York Life Insurance Company ("New York Life") and Jimmie Stephens, its agent, are defendants in six actions pending in the Clarke Circuit Court. We granted them permission to appeal in each of the six cases from the denial of their motions for summary judgment. See Rule 5, Ala. R.App. P. Both New York Life and Stephens claim that the trial court erred in denying their motions for summary judgment because, they say, the plaintiffs' claims are precluded by the class-action settlement and final judgment in Harry W. Willson v. New York Life Ins. Co., (No. 94/127804, Sup.Ct.N.Y.County) (unpublished). Because we hold that the class-action settlement released the claims asserted by these plaintiffs against New York Life and Stephens, we reverse and remand.

I.
In June and July 1990, New York Life issued whole-life insurance policies (the "policies") to Elsie Robinson, Harry A. Steadham, Henry E. Armistead, Oris L. Armistead, Wilfred S. Vick, and Thomas Boutwell (the "plaintiffs"). The plaintiffs purchased the policies after a sales presentation on the premises of their employer, Lewis Pest Control, by Jimmie Stephens, an agent of New York Life.
In February 1996, the Supreme Court of New York County, New York (the "New York court"), approved a nationwide class-action settlement of complaints against New York Life. The complaints alleged, among other things, that New York Life had made misrepresentations with respect to "the sale of life insurance policies not as insurance but as pension or retirement plans, investment or savings accounts, tuition funding or mortgage protection plans, or other types of investment, savings, thrift or retirement vehicles." Willson Stipulation of Settlement at 2. The court-approved settlement provided as follows:
"H. RELEASE AND WAIVER, AND ORDER OF DISMISSAL

"1. Release. Effective as of the Final Settlement Date, Plaintiffs and all Class *465 Members hereby expressly agree that they shall not now or hereafter institute, maintain or assert against the Releasees,[[1]] either directly or indirectly, on their own behalf, on behalf of the Class or any other person, and hereby release and discharge the Releasees from, any and all causes of action, claims, damages, equitable, legal and administrative relief, interest, demands or rights, whether based on federal, state or local statute or ordinance, regulation, contract, common law, or any other source, that have been, could have been, may be or could be alleged or asserted now or in the future by Plaintiffs or any Class Member against the Releasees in the Actions or in any other court action ... on the basis of, connected with, arising out of, or related to, in whole or in part, the Released Transactions[[2]] and servicing relating to the Released Transactions, including without limitation:
". . . .
"(ii) any or all of the acts, omissions, facts, matters, transactions, occurrences, or any oral or written statements or representations allegedly made in connection with or directly or indirectly relating to the Released Transactions, including without limitation any acts, omissions, facts, matters, transactions, occurrences, or oral or written statements or representations relating to:
". . . .
"(f) the fact that the Policies[[3]] were or were not life insurance or that Plaintiffs' or Class Members' objectives (and/or the fact that the purchaser's goals) would be funded by the cash values and/or benefits derived from a life insurance policy;
"(g) whether the Policies were, would operate or could function as an Investment Plan;[[4]]
". . . ."
Stipulation of Settlement at 56-58.
In August 1996, the plaintiffs, acting separately, filed actions in the Clarke Circuit Court against New York Life and Stephens, alleging fraud, suppression, and deceit in connection with the sale of the policies. The trial court granted Stephens's motion to consolidate the six cases. New York Life and Stephens subsequently filed motions for summary judgment. The trial court held a hearing and denied the motions, without explanation. In May 1998, this Court granted permission to appeal *466 from the trial court's denial of summary judgment.

II.
New York Life and Stephens maintain that the trial court erred in denying their motions for summary judgment, arguing that, because the plaintiffs failed to opt out of the Willson class action, the claims asserted by the plaintiffs are barred by the Willson class-action settlement.[5]
The New York court entered a valid judgment, and this Court must give effect to that judgment. See Martin v. Drummond Co., 663 So.2d 937, 947 (Ala.1995) (recognizing that the settlement of a prior class action bars the relitigation of claims settled in that class action).[6] In its interpretation of a release, this Court has stated, "`The construction of a written document is a function of the court. If the document is unambiguous, its construction and legal effect are [questions] of law which may be decided, under appropriate circumstances, by summary judgment.'" Boggan v. Waste Away Group, Inc., 585 So.2d 1357, 1359-60 (Ala.1991) (quoting Jehle-Slauson Constr. Co. v. Hood-Rich, Architects & Consulting Eng'rs, 435 So.2d 716, 720 (Ala.1983)). However, as previously noted, the trial court denied the summary-judgment motions filed by New York Life and Stephens.
This Court reviews de novo a trial court's denial of a summary judgment. See Young v. La Quinta Inns, Inc., 682 So.2d 402, 403 (Ala.1996) (citing Hightower & Co. v. United States Fidelity & Guar. Co., 527 So.2d 698 (Ala.1988)). As this Court has stated:
"A summary judgment is proper where there is no genuine issue of material fact as to the claims asserted and the movant is entitled to a judgment as a matter of law. Rule 56, Ala. R. Civ. P.; Booker v. United American Ins. Co., 700 So.2d 1333, 1334 (Ala.1997). Initially, the movant has the burden to make a prima facie showing that there is no genuine issue of material fact. Booker, 700 So.2d at 1334. Such a showing shifts the burden to the nonmovant to present substantial evidence as to each element of the claim challenged by the movant. Id.; Kidd v. Kilpatrick Chevrolet, Inc., 613 So.2d 336, 338 (Ala. 1993)."
Ex parte Atmore Community Hosp., 719 So.2d 1190, 1193 (Ala.1998).
"In determining whether the nonmovant presented substantial evidence, this Court views the evidence in the light most favorable to the nonmovant...." Booker, 700 So.2d at 1334. In this case, however, the pertinent facts are undisputed. There is no dispute that the plaintiffs are members of the Willson settlement class. All of the plaintiffs were issued whole-life policies by New York Life in 1990, and, thus, they fell within the Willson class. The plaintiffs did not timely opt out of the Willson class; thus, they are members of the Willson settlement class. Accordingly, the only issue to be determined by this Court is whether the claims asserted by the plaintiffs are encompassed by the Willson settlement, and that issue is a question of law. See Boggan, 585 So.2d at 1359-60. "It is a well settled statement of law that `in the absence of fraud, a release supported by a valuable consideration, unambiguous in meaning, will be given effect according to the intention of the parties to be judged by the court from what appears within the four corners of the instrument itself, and parol evidence is not admissible to impeach or vary its terms.'" Id. at 1359 (quoting Jehle-Slauson Constr. Co., 435 So.2d at 719-20).
*467 The plaintiffs' complaints assert that Stephens, acting as an agent of New York Life, made misrepresentations with respect to the policies. Specifically, the plaintiffs contend that Stephens represented that the policies contained both life insurance and retirement benefits and that if the plaintiffs purchased the policies their employer would purchase matching policies for their benefit. As previously noted, the Willson Stipulation of Settlement released New York Life and its agents from liability for claims "connected with, arising out of, or related to, in whole or in part,... representations allegedly made ... relating to: ... the fact that the Policies were or were not life insurance ... [or] whether the Policies were, would operate or could function as an Investment Plan."[7]Willson Stipulation of Settlement at 56-58. Clearly, the plaintiffs' claims with respect to Stephens's misrepresentation of the policies as containing retirement benefits fall within the scope of the broad language of this settlement agreement.[8]
The plaintiffs contend, however, that their misrepresentation claims concerning whether their employer would purchase matching policies for their benefit fall outside the scope of the settlement agreement. We disagree. The settlement agreement specifically released claims by class members "connected with, arising out of, or related to, in whole or in part, the Released Transactions."[9]Willson Stipulation of Settlement at 56-58. A "matching" policy is inherently "connected with, aris[es] out of, or [is] related to" the policy it is to match. Thus, giving effect to the unambiguous language of the settlement agreement mandates a conclusion that the plaintiffs' claims are encompassed by the Willson settlement and, thus, are barred by the release.[10]Boggan, 585 So.2d at 1359-60.

III.
Because all of these six plaintiffs were members of the Willson class and did *468 not timely opt out of that class, they are bound by the terms of the Willson settlement agreement. After the settlement, the plaintiffs filed these claims against New York Life and Stephens, claims that were specifically released by the Willson settlement. Therefore, all of the plaintiffs' claims are now precluded by the Willson class-action settlement and final judgment. Accordingly, the trial court erred in denying the summary-judgment motions. The orders denying those motions are reversed, and these cases are remanded with instructions to enter in each case a summary judgment in favor of New York Life and Stephens.
1971207REVERSED AND REMANDED.
1971208REVERSED AND REMANDED.
1971209REVERSED AND REMANDED.
1971210REVERSED AND REMANDED.
1971211REVERSED AND REMANDED.
1971212REVERSED AND REMANDED.
HOOPER, C.J., and HOUSTON, KENNEDY, LYONS, BROWN, and JOHNSTONE, JJ., concur.
COOK, J., dissents.
MADDOX, J., recuses himself.
COOK, Justice (dissenting).
The majority reverses the denial of summary judgment motions filed by the defendants New York Life Insurance Company and its agent (together, "New York Life") on the ground that the plaintiffs' claims are barred by a settlement in a New York state court in a class action involving New York Life. In doing so, the majority relies exclusively on the "Release and Waiver and Order of Dismissal" incorporated into the settlement in the New York case. Because I believe, as discussed below, that the inquiry should focus on the notice received by the plaintiff, rather than on the release, I dissent.
"[A] forum State may exercise jurisdiction over the claim of an absent class-action plaintiff" if, among other things, the absent plaintiff receives the "best practicable" notice, which "should describe the action and the plaintiffs' rights in it." Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 811-12, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985) (emphasis added). The plaintiffs contend that "there is absolutely nothing in the class action notice ... that indicates that [their] claims ... are included in the [New York] class action." Brief of Appellees, at 8-9. I agree with this contention. Thus, the inquiry should focus not on the "Release," but on the "notice."
The claims at issue are that New York Life, through its agent, represented to the plaintiffs that if they bought life insurance policies from New York Life, then New York Life would furnish their employer with a "matching policy" in order to double the benefits available to the employees. The class-action "notice" the plaintiffs received stated in part:
"This action consolidates four class action lawsuits against New York Life which have been filed since September 1994 in the Supreme Court of the State of New York (the `Court'). The Plaintiffs in the lawsuits make allegations concerning (i) how New York Life made use of a `Premium Offset Proposal,' New York Life's name for a method of using dividends to pay premiums on a whole life policy rather than paying them in cash, as well as New York Life's use of the Single or Limited Payment Universal Life Concept, (ii) the sale of life insurance by portraying it as an investment, savings, retirement or other similar plan without disclosing that it is life insurance or the nature of the policy's benefits; and (iii) the replacement of any existing life insurance policy with a new life insurance policy, or the sale of a new life insurance policy funded in *469 whole or in part using an existing policy's cash value. The allegations in the lawsuits include claims that New York Life misled policyowners in these and other circumstances.
". . . .
"By Order dated July 31, 1995, the Court certified for settlement purposes a class (the `Class') of persons or entities who have, or had at the time of the policy's termination, an ownership interest in one or more of certain whole or universal life insurance policies issued by New York Life during the Class Period."
Brief of Appellees, Appendix. I believe the claims described in this notice are substantially different from these plaintiffs' claims. Thus, I would hold that this "notice" failed to satisfy the elements, stated in Shutts, which are necessary to render the New York class-action settlement binding on Alabama plaintiffs. I therefore dissent.
NOTES
[1] The Willson Stipulation of Settlement provided, at 18:

"`Releasees' means the Defendants, their parents, subsidiaries, affiliates, predecessors, successors and assigns, and each of their respective past, present and future officers, directors, employees, agents, representatives, attorneys, heirs, administrators, executors, predecessors, successors and assigns, or any of them."
[2] The Willson Stipulation of Settlement provided, at 18:

"`Released Transactions' means the marketing, solicitation, application, underwriting, acceptance, sale, purchase, operation, retention, administration, or replacement by means of surrender, partial surrender, loans respecting, withdrawal and/or termination of the policies or any insurance policy or annuity sold in connection with, or relating in any way directly or indirectly to the sale or solicitation of, the Policies."
[3] The Willson Stipulation of Settlement provided, at 16:

"`Policy' or `Policies' means one or more whole life insurance or universal life insurance policies issued by Defendants from January 1, 1982 through December 31, 1994, including A.D.82 and subsequent Whole Life, Employees Whole Life and Modified Premium Whole Life policies, Survivorship Whole Life policies as well as Target Life and Employees Adjustable Life policies issued during the Class Period, but does not include SPL policies, VL policies and the CSL policies."
[4] The Willson Stipulation of Settlement provided, at 13:

"`Investment Plan' means a pension or retirement plan, investment or savings account, tuition-funding or mortgage-protection plan or other type of investment, savings or thrift vehicle."
[5] Stephens's argument is based on the fact that the Willson class-action settlement specifically released claims against all agents of New York Life. There is no dispute that Stephens is an agent of New York Life. Thus, if New York Life is entitled to a summary judgment in its favor based on the settlement, it follows that Stephens is also so entitled.
[6] The plaintiffs do not challenge the validity of the Willson settlement.
[7] The plaintiffs also assert that the court-approved class-action notice was inadequate to inform them that these claims would be released by the Willson settlement agreement. However, the language of the class-action notice is substantially identical to the language of the Willson settlement agreement. Specifically, the class-action notice states:

"This action consolidates four class action lawsuits against New York Life which have been filed since September 1994 in the Supreme Court of the State of New York.... The Plaintiffs in the lawsuits make allegations concerning [among other things] ... (ii) the sale of life insurance by portraying it as an investment, savings, retirement or other similar plan without disclosing that it is life insurance or the nature of the policy's benefits...."
Willson Class Action Notice at 2. Moreover, the class-action notice also states that the settlement agreement would release claims "connected with, arising out of, or related to, in whole or in part, ... representations allegedly made ... relating to: ... the fact that the Policies were or were not life insurance... [or] whether the Policies were, would operate or could function as an Investment Plan." Willson Class Action Notice at 9. See Twigg v. Sears, Roebuck & Co., 153 F.3d 1222, 1226-27 (11th Cir.1998) (noting that principles of res judicata or claim preclusion apply to judgments in class actions as long as the notice is sufficient to afford due process).
[8] In fact, the plaintiffs concede as much in their brief. Brief for Appellees at 8-9 ("While the Plaintiffs in these cases may have claims that would be included in the Willson class action regarding misrepresentation or mischaracterization of the whole life policy as a retirement plan, ... [the Willson class action did not encompass] the Plaintiffs' claims ... [of] misrepresentation made by ... Stephens... that the Plaintiffs' employer ... would simultaneously purchase an insurance policy....").
[9] The language of the class-action notice is identical to that of the settlement agreement. It states that the settlement agreement would release claims "connected with, arising out of, or related to, in whole or in part, the Released Transactions." Willson Class Action Notice at 9. See Twigg, 153 F.3d at 1226-27.
[10] Because the relevant language of the class-action notice is identical to that of the settlement agreement, the same reasoning that applies to the scope of the settlement agreement dictates the conclusion that the class-action notice covers claims regarding the matching policies. See Twigg, 153 F.3d at 1226-27.